IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADFORD SHAFFER,<br><br>    Plaintiff-Petitioner,<br><br>v.<br><br>MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., CHAIR AND COMMITTEE MEMBERS, MANAGEMENT, DEVELOPMENT AND COMPENSATION COMMITTEE, BOARD OF DIRECTORS OF MERRILL LYNCH & CO., INC., AND MERRILL LYNCH & CO, INC.,<br><br>    Defendants-Respondents. | No. C 11-0303 CRB<br><br>**ORDER GRANTING MOTION TO CONFIRM AND CORRECT ARBITRATION AWARD AND DENYING MOTION TO VACATE ARBITRATION AWARD** |

    This case presents the issue of whether a neutral arbitrator is required to disclose his use of two private research attorneys. The Court concludes that the best practice is to disclose the arbitrator's plan to use research attorneys and give the parties an opportunity to object in advance. That is not what happened here. However, Defendant has not made a showing that the arbitrator's failure to follow this best practice was either misconduct or a breach of contract. Even if it was misconduct or a breach of contract, Defendant waived its right to object by failing to question the use of the research attorneys during the arbitration proceeding.

    Therefore, Defendant's Motion to Vacate the arbitration award is DENIED and Plaintiff's Motion to Confirm and Correct the award is GRANTED.

## I. BACKGROUND

Plaintiff worked for Defendant for more than 20 years as a financial advisor. Choi Decl. ¶ 2. During his time at Merrill Lynch, Plaintiff received long-term incentive compensation under three separate plans. Id. ¶ 3. In 2008, he left Merrill Lynch to work for a competitor. Id. ¶¶ 7-8. Because Plaintiff went to work for a competitor, Defendant denied him benefits from the plans that had not yet vested. Id. ¶ 8. Plaintiff brought an arbitration action to recover these benefits. Id. ¶ 11. Plaintiff brought a breach of contract claim along with a claim that Defendant interfered with his right to compete under California Civil Code section 52.1. Id. ¶¶ 14, 20. During the arbitration process, Defendant agreed to pay Plaintiff the amounts provided under the plans, but refused to concede that the plans' provisions were invalid or that Defendant had interfered with Plaintiff's right to compete. Id. ¶ 16. Plaintiff pressed on with the arbitration, arguing that the issue should be decided and that he was entitled to pursue his tort and punitive damages claims. Edlund Decl. ¶ 9.

On July 6, 2010, the JAMS arbitrator issued an Interim Award that gave Plaintiff: (1) payments as required under the plans; (2) $250,000 in emotional distress damages under section 52.1; (3) $750,000 in exemplary damages; and (4) attorneys' fees and costs. Id., Ex. D. During a hearing on the amount of attorneys' fees on September 20, 2010, the arbitrator mentioned to the parties that he had hired two research attorneys to help him with the case.[1] The hearing, however, was not the first time the use of research attorneys had been disclosed to the parties. An invoice dated April, 30, 2010, has three references to a research attorney. Third Edlund Decl., Ex X. This time sheet was in Defendant's possession. Third Edlund

---

[1] The relevant portion of the hearing transcript reads:
> Incidentally, for – for what it's worth, it took me longer than normal to get the interim decision out because this was – really tough. The – I probably spent about 20 and maybe more than that thousand dollars of my own money hiring research clerks to work with me on this issue. If you – if you read your – if you read my timesheets, you'll see references to one of them. I wasn't satisfied with the analysis, and so I hired a separate one and did it blind. No discussion whatsoever about what happened the first time around, just presented the issues as a – as a cold presentation. And none of that – none of that shows up on your timesheets. I didn't charge for any of it. And obviously not for the clerks either.

Choi Decl., Ex. E at 61:8-23.

2

Decl. ¶ 3. On December 6, 2010, the arbitrator issued his Final Award, which gave Plaintiff $1,164,100 in attorneys' fees and costs.[2] In the Final Award, the arbitrator again made a brief reference to the two research attorneys.[3]

Defendant now seeks to have the award overturned because the arbitrator received help from the two research attorneys in deciding the case. Plaintiff seeks to have the award confirmed and corrected by the Court.

## II.     LEGAL STANDARD

Both the California Arbitration Act and the Federal Arbitration Act provide "only limited grounds for judicial review of an arbitration award." Cable Connection, Inc. v. DirecTV, Inc., 44 Cal. 4th 1334, 1344 (Cal. 2008).[4] Arbitration awards are final – except under very limited circumstances. See Moncharsh v. Heily & Blase, 3 Cal. 4th 1, 9-10 (Cal. 1992) ("parties to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final"); 9 U.S.C. § 9 (under federal law, a court is required to confirm arbitration awards "unless the award is vacated, modified, or corrected as prescribed" in 9

---

[2] The amount awarded for attorneys' fees and costs is the result of a miscalculation, addressed later in this order.

[3] The relevant portion of the Final Award reads:
> As noted above, there is no question but that the question put to the Arbitrator in connection with the Tort Claim was both novel and difficult. The parties litigated the application of this statute to the facts of this case ferociously. Due to the scant California authority on the subject, most of the more persuasive cases came from out of state. Often, issues had to be resolved by analogy. The Arbitrator struggled for hours with the issue, and hired two research attorneys to analyze the problem independently. In the middle of this research, the case had taken on a posture that required additional briefing by counsel, as it now presented in a manner that had not been previously evaluated. The tentative conclusions reached by the Arbitrator and the research attorneys vacillated on key issues. Ultimately, however, through a most arduous process, the Arbitrator resolved the issue in a manner that he comfortably feels would be upheld were the same issue presented to an appellate court. The issue of novelty and difficulty warrants an upward adjustment to the Tort Case Lodestar.

Choi Decl., Ex. F at 50.

[4] It is unnecessary to decide which law controls this case as both laws are virtually identical in all relevant ways. Neaman v. Kaiser Found. Hosp., 9 Cal. App. 4th 1170, 1174 (Cal. Ct. App. 1992) ("[s]tatutory grounds for vacation of an award in California . . . are practically identical with the comparable federal grounds").

3

U.S.C. §§ 10, 11). However, under both California and federal law, a court can vacate an arbitration award if there is misconduct by the arbitrator that prejudices any of the parties.[5] The "burden of establishing grounds for vacating an arbitration award is on the party seeking it." United States Life Ins. Co. v. Superior Nat'l Ins. Co., 591 F.3d 1167, 1173 (9th Cir. 2010).

## III. ANALYSIS

Plaintiff Bradford Shaffer seeks to confirm (and correct) the damage award by the arbitrator against his former employer, Merrill Lynch. Merrill Lynch, on the other hand, seeks to vacate the award in part,[6] because the arbitrator hired two research attorneys who helped the arbitrator do research and came to their own tentative conclusions. Defendant does not claim that these attorneys wrote the arbitrator's final ruling, nor that the arbitrator did not come to his own conclusions. However, Defendant does argue that it should have been notified before the arbitrator consulted with outside attorneys and that the arbitrator's failure to do this constitutes misconduct, allowing for partial vacatur.

Defendant asks this Court to vacate the arbitrator's decision under one of two theories. First, Defendant argues that the award should be set aside because the arbitrator committed misconduct by hiring the two research attorneys. Second, Defendant argues that it was deprived of the benefit of its contractual bargain. Defendant argues that because it did not specifically contract for the arbitrator to hire two researchers, it should not be held to the terms of the award. Def. Mot. for Partial Vacatur at 11.

**1.  Arbitrator Misconduct**

---

[5] California law requires that "the court shall vacate the award if the court determines . . . [that the] rights of the party were substantially prejudiced by misconduct of a neutral arbitrator." Cal. Civ. Proc. Code § 1286.2. Federal law provides that a district court "may make an order vacating the award upon the application of any party to the arbitration . . . where the arbitrators were guilty of . . . misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10. There are two differences between the two statutes. First, under California law the court "shall" vacate the award and under the federal statute the court "may" vacate the award. Second, under the federal law "prejudice" is required, while under California law the party must be "substantially prejudiced."

[6] Defendant does not seek to vacate the portion of the award relating to Plaintiff's breach of contract claim. Defendant only challenges Plaintiff's claims under California Civil Code section 52.1.

4

California law requires a court to vacate an arbitration award if the "rights of the party were substantially prejudiced by misconduct of a neutral arbitrator." Cal. Civ. Proc. Code § 1286.2.[7] Defendant argues that the arbitrator committed misconduct under three separate statutes or ethical standards. First, Defendant argues that the arbitrator relied on information not obtained at the arbitration hearing to make his decision, in violation of California Civil Procedure Code section 1282.2(g). "If a neutral arbitrator intends to base an award upon information not obtained at the hearing, he shall disclose the information to all parties to the arbitration and give the parties an opportunity to meet it." Id. Second, Defendant argues that the arbitrator failed to disclose information, as required by California Civil Procedure Code section 1281.9(a). "[T]he proposed neutral arbitrator shall disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial." Id. Section 1281.9(a) includes examples of information that must be disclosed, including information required to be disclosed under the ethical standards adopted by the Judicial Council. Id. at (a)(2). Third, Defendant argues that the arbitrator violated his ethical obligations under the Ethics Standards for Neutral Arbitrators adopted by California's Judicial Council. Specifically, Defendant claims that the arbitrator violated Standard 14(c) of the Ethics Standards for Neutral Arbitrators, which states that an "arbitrator may obtain the advice of a disinterested expert on the subject matter of the arbitration if the arbitrator notifies the parties of the person consulted and the substance of the advice and affords the parties a reasonable opportunity to respond." Cal. Rules of Court, appen., div. VI at std. 14(c).

### a.   Section 1282.2(g)

This statute requires that the arbitrator disclose to the parties any information obtained outside of the arbitration upon which the arbitrator intends to base his decision. "If a neutral arbitrator intends to base an award upon information not obtained at the hearing, he shall disclose the information to all parties to the arbitration and give the parties an opportunity to

---

[7] The standard under federal law is similar and the analysis is nearly identical. See Neaman, 9 Cal. App. 4th at 1174.

5

1 meet it." § 1282.2(g). But the party seeking to vacate the arbitration award must show
2 "substantial prejudice." Canadian Indem. Co. v. Ohm, 271 Cal. App. 2d 703, 708 (Cal. Ct.
3 App. 1969) (citing Cal. Civ. Proc. Code § 1286.2(c), (e)). In Ohm, the arbitrator visited the
4 site of a fire at issue in the dispute and obtained independent bids from subcontractors to help
5 ascertain the amount of damages. Id. at 706. The court held that even this amount of
6 independent investigation did not substantially prejudice the parties. Id. at 708.[8]

7 The arbitrator plainly did not violate this section. Hiring two attorneys to do legal
8 research is far less prejudicial than seeking independent bids from subcontractors in trying to
9 resolve an insurance dispute – if it is prejudicial at all.[9] In addition, this statute logically
10 would not cover legal research. The section speaks of "information." Doing legal research is
11 not the same as doing informational research on the facts of a case. Equating the two would
12 likely require arbitrators to present every individual piece of legal research – each treatise,
13 each case – to the parties and give them a chance to challenge it. This would create
14 significant barriers to the work of arbitrators and is not supported by a common sense, plain
15 language reading of the statute.

16 **b.   Section 1281.9(a)**

17 Section 1281.9 sets forth initial disclosure requirements in an arbitration. See Johnson
18 v. Gruma Corp., 614 F.3d 1062, 1067 (9th Cir. 2010). "Initial disclosures under § 1281.9 are
19 provided to assist the parties in determining whether to accept a particular person as an
20 arbitrator. The wording of § 1281.9 makes clear that its disclosure requirements apply only
21 at the beginning of the arbitration process." Id.[10]

---

[8] Defendant argues that cases decided before 2001 are "inapplicable to this matter" because the Judicial Council had yet to establish the ethical standards for neutral arbitrators. Def. Reply, at 8-9. There is some merit to this argument as it relates to violations of those ethical standards, but it does not have merit as it relates to violations of section 1282.2(g). That statute was already in place by the time Ohm was decided in 1969. See Ohm, 271 Cal. App. 2d at 708 (citing to section 1282.2(g)).

[9] The Court finds that Defendant has failed to show even the prejudice required under the less exacting prejudice standard of 9 U.S.C. § 10.

[10] For example, the court in Johnson points to language in § 1281.9 (a) that provides, "when a person is to serve as a neutral arbitrator, the proposed neutral arbitrator shall disclose" to show that these disclosures are intended to come at the beginning of the arbitration process. 614 F.3d at 1067.

1   Section 1281.9(a) requires the arbitrator to disclose any information, including the
2   specific information required by the ethical standards, that would cause "a person aware of
3   the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to
4   be impartial." Cal. Civ. Proc. Code § 1281.9(a).  The statute contains a noninclusive list of
5   information that would lead to the disqualification of a judge under California law[11] and
6   other possible conflicts, such as if the arbitrator had an attorney-client relationship with any
7   party or the lawyer for any of the parties.  Id.  The statute also includes any matters required
8   to be disclosed by the ethical standards adopted by the Judicial Council.  Id.

9   The Judicial Council has adopted Standard 7 of the Ethics Standards for Neutral
10  Arbitrators in Contractual Arbitration, which details the required disclosures.  Cal. Rules of
11  Court, appen., div. VI at std. 7.  They include family relationships with a party, whether the
12  arbitrator has served as a dispute resolution neutral in a case involving any of the parties,
13  whether the arbitrator has a financial interest, and other potential conflicts.  Id.

14  Taken together, section 1281.9 and Standard 7 principally set rules that govern
15  conflicts of interest.  The argument that hiring two research attorneys creates a conflict
16  similar to any of the listed situations in section 1281.9 or Standard 7 – absent any
17  information that the research attorneys themselves had conflicts, something Defendant has
18  not shown – is misplaced.  In addition, hiring two researchers hardly qualifies as an act that
19  would cause "a person aware of the facts to reasonably entertain a doubt that the proposed
20  neutral arbitrator would be able to be impartial."  While there is a difference between the role
21  of an arbitrator and the role of a judge, it is hard to separate the role of these research
22  attorneys from the role of judicial clerks.[12]  Judicial clerks serve judges in much the same
23  way as these research attorneys seem to have served the arbitrator.  Having judicial clerks do
24  research and come to tentative decisions in no way creates a situation in which "a person

---

[11] This includes situations where the judge has personal knowledge of the facts concerning the proceeding, where the judge served as a lawyer in the proceeding, or where the judge has a financial interest in the matter.  Cal. Civ. Proc. Code § 170.1.

[12] Defendant points out that judicial clerks are subject to certain ethical duties that would not apply to these two research attorneys (although all lawyers are subject to some ethical duties).  Def. Reply at 1.  However, the functions the two perform are similar.

7

aware of the facts" would "reasonably entertain a doubt" that a judge would be impartial. Similarly, the hiring of two research attorneys to assist the arbitrator does not create doubt about the impartiality of that arbitrator. On the contrary, assistance from able research attorneys can improve the ability of an arbitrator to come to his or her decision.

But even if the failure to disclose research attorneys was misconduct under section 1281.9, it would not be a violation of the statute because the arbitrator did not hire the research attorneys until after the arbitration had begun. See Choi Decl., Ex. F at 50. As long as there was no potential conflict at the outset of the arbitration, the arbitrator did not violate the initial disclosure requirements set out in section 1281.9. See Johnson, 614 F.3d at 1068.[13]

### c. Standard 14(c)

Section 1281.85 governs supplemental disclosures that are required after the initial disclosures required under section 1281.9. See Johnson, 614 F.3d at 1068. Section 1281.85 provides that "a person serving as a neutral arbitrator pursuant to an arbitration agreement shall comply with the ethics standards for arbitrators adopted by the Judicial Council pursuant to this section." Cal. Civ. Proc. Code § 1281.85(a). One of those ethical standards is Standard 14(c), which Defendant argues the arbitrator violated. Standard 14(c) provides that an "arbitrator may obtain the advice of a disinterested expert on the subject matter of the arbitration if the arbitrator notifies the parties of the person consulted and the substance of the advice and affords the parties a reasonable opportunity to respond."

At first glance, Standard 14(c) could preclude the use of the two research attorneys. However, while countless attorneys have convinced themselves otherwise, simply having a J.D. is not enough to qualify someone as an "expert" on everything. This is not to say that a lawyer could never be an expert on the subject matter of the arbitration under Standard 14(c). For example, if the arbitrator had been wrestling with a question of constitutional law and

---

[13] This rationale only applies to the statute itself and does not apply to Standard 7 of the Ethics Standards for Neutral Arbitrators in Contractual Arbitration. The ethics standards contain a continuing duty of disclosure. See std. 7(c) ("If an arbitrator subsequently becomes aware of a matter that must be disclosed under either subdivision (d) or (e) of this standard, the arbitrator must disclose that matter to the parties in writing within 10 calendar days after the arbitrator becomes aware of the matter.").

had sought the advice of famed professor Erwin Chemerinsky, this Court might find that Standard 14(c) would apply. But Defendant has failed to make any showing that these research attorneys were experts in the "subject matter of the arbitration," beyond simply stating that they are lawyers. That is not enough.

Examining the history behind this standard and comparing it to a similar ethical standard for judges also casts doubt on the proposition that Standard 14(c) bars the use of these research attorneys. In 2001, California enacted Senate Bill 475, which required the Judicial Council to adopt ethical requirements for neutral arbitrators. See Cal. Civ. Proc. Code § 1281.85(a). In response, the Judicial Council formed a panel to help craft the ethical rules. Ruth V. Glick, California Arbitration Reform: The Aftermath, 38 U.S.F. L. Rev. 119, 121 (2003). After debate and a period of public comment, the Judicial Council adopted the Ethics Standards for Neutral Arbitrators in Contractual Arbitration, which became effective July 1, 2002. Id. Standard 14, which was then Standard 12, was largely uncontroversial. Jay Folberg, Arbitration Ethics – Is California the Future, 18 Ohio St. J. on Disp. Resol. 343, 347 (2003).

The wording of what is now Standard 14(c) is very similar to the wording of Canon 3(B)(7) of the Code of Judicial Ethics, something noted by the Judicial Council when it requested public comment on the proposed rules. Judicial Council, Ethics Standards for Neutral Arbitrators in Contractual Arbitration, Invitation to Comment, at 16 (2002). But the differences between the two rules is telling and suggests that the Judicial Council was not trying to bar the use of research attorneys without notice to the parties. Standard 14(c) reads: "An arbitrator may obtain the advice of a disinterested expert on the subject matter of the arbitration if the arbitrator notifies the parties of the person consulted and the substance of the advice and affords the parties a reasonable opportunity to respond." (emphasis added). In contrast, Canon 3(B)(7) reads: "A judge may obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge if the judge gives

9

1  notice to the parties of the person consulted and the substance of the advice, and affords the parties
2  reasonable opportunity to respond." (emphasis added).[14]

3  A judge, therefore, cannot seek the advice of a legal expert without notifying the parties, nor
4  independently investigate facts in a case, and "must only consider the evidence presented."  See
5  Canon 3(B)(7) cmt.  However, Standard 14(c) seems to allow an arbitrator to consult with outside
6  experts on the facts of a case, so long as he notifies the parties, and seems to be silent with respect to
7  the arbitrator's ability to consult with outside experts on the law of a case.[15]

8  Therefore, even if the research attorneys could be characterized as "experts," the arbitrator
9  did not violate the Ethics Standards for Neutral Arbitrators in Contractual Arbitration when he
10 consulted them.  Nothing in the ethical standards seems to bar an arbitrator from seeking outside
11 advice from an expert on the law without notifying the parties.

12 **2.  Contractual Bargain**

13 Defendant argues that, apart from any potential misconduct by the arbitrator, this Court
14 should vacate the arbitration award because the use of two research attorneys interfered with the
15 contractual bargain it had entered into to arbitrate the dispute with Plaintiff.  Mot. for Partial Vacatur
16 at 7.  Defendant claims "the parties contracted for the Arbitrator – not research attorneys – to review
17 and decide their dispute."  Id.  Arbitration is a matter of contract, Chiron Corp. v. Ortho Diagnostic
18 Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000), but Defendant fails to show how the hiring of
19 research attorneys is an independent avenue for vacating the arbitration award under a breach of
20 contract theory.

21 The arbitration agreement allowed Plaintiff to select either the American Arbitration
22 Association ("AAA") or JAMS.  Choi Decl., Ex. A.  The arbitration agreement required the
23 arbitrator to (1) follow the Comprehensive Arbitration Rules and Procedures of JAMS (if JAMS was

---

[14] Canon 3(B)(7)(b) contains an exception for "court personnel" that is not found in Standard 14, however.

[15] The difference in language between Standard 14(c) and the Canon could be interpreted differently.  It is possible that the drafters of the ethical standards sought to allow arbitrators to consult experts on both the facts and the law as long as they disclosed this to the parties.  But even if this alternative interpretation of Standard 14(c) is correct, Defendant has still not established that the two lawyers were "experts" and has waived any challenge for misconduct, as described below.

10

1  selected); (2) adhere to "established principles of substantive law and the governing burdens of
2  proof"; (3) refrain from modifying the terms of the plan; and (4) be a licensed attorney with relevant
3  experience. Id.[16] The relevant JAMS rules on *ex parte* communications are less stringent than those
4  in Standard 14. Id. at Ex. G. For example, the JAMS rules only prohibit *ex parte* communication
5  between the arbitrator and the parties and – in contrast with Standard 14 – are silent on
6  communication with third parties. See id. In addition, JAMS's rules for disclosure of information
7  simply require that disclosures required by law be made within ten days of the date of appointment
8  of the arbitrator. Id.

   As shown above, the arbitrator did not violate any state or federal statute, nor did he violate
10 any standard of ethics. By obeying these statues and standards, the arbitrator gave Defendant the
11 benefit of its contractual bargain. Defendant bargained to have Plaintiff choose between AAA and
12 JAMS. Defendant also bargained to have the rules of the chosen arbitrator and the relevant law
13 govern the arbitration. This is exactly what Defendant got.

   Defendant argues that "the parties contracted for the Arbitrator – not research attorneys – to
15 review and decide their dispute." But the language of the Final Award shows that the arbitrator
16 came to his own, independent decision. The Final Award reads: "Ultimately, however, through a
17 most arduous process, the Arbitrator resolved the issue in a manner that he comfortably feels would
18 be upheld were the same issue presented to an appellate court." Choi Decl., Ex. F at 50. Defendant
19 has not alleged, and has made no showing, that the arbitrator did not make all of his own decisions
20 or write all of his own opinions. Defendant bargained for the arbitrator to decide the dispute while
21 obeying the rules of JAMS and the applicable state and federal laws. Defendant has made no
22 showing that this is not what happened.

23 **3.    Waiver**

24 Even if Defendant could establish that the arbitrator had engaged in misconduct or that it had
25 been deprived of the benefit of its contractual bargain, it failed to object in a timely manner and

---

[16] The agreement also states that the "award rendered in this arbitration shall be final and binding, and judgment upon the award may be entered in any court of competent jurisdiction." Id. Arguably, it is Defendant that is trying to deny Plaintiff the benefit of this part of his contractual bargain.

11

therefore waived its right to challenge the arbitration award on those grounds. There is no dispute that Defendant knew that the arbitrator used the research attorneys before the arbitrator issued his Final Award. Defendant was given this information on two occasions. First, the use of a research attorney was included in billing records submitted to Defendant in April 2010. Third Edlund Decl., Ex X. It is arguable that this was not explicit enough to put Defendant on notice of possible misconduct by the arbitrator. However, the second disclosure provided more than enough notice. On September 20, 2010, the arbitrator informed Defendant explicitly of the use of research attorneys during a hearing. Choi Decl., Ex. E at 61:8-23. Regrettably, the arbitrator did not reveal more information about who the attorneys were, or how they were used at the hearing. But the disclosure was enough to put the parties on notice of this issue.

Instead of objecting to the use of research attorneys or inquiring to their qualifications and background, Defendant said nothing. Defendant even conceded at the motion hearing before this Court that it could have asked about the research attorneys during the arbitration process, but failed to do so. Defendant failed to raise the issue until it filed its motion to vacate the award in this Court. Defendant argues that it was not put on notice in the September 2010 hearing because the wording the arbitrator used did not sufficiently raise the possibility of misconduct. At the September 2010 hearing the arbitrator said the research attorneys had conducted "analysis" for the arbitrator while the Final Award states that the research attorneys did analysis and reached "tentative conclusions" about the case. This is a distinction without a difference. The question presented here is whether Defendant was given enough information at the September 2010 hearing to put it on notice to ask some questions or to object. If the Final Award gave Defendant the grounds to file an action to vacate the arbitration award in federal court, the September 2010 hearing surely gave it enough notice to ask a few follow-up questions during the arbitration proceedings.

This is not unlike the situation in Johnson, 614 F.3d at 1069. In Johnson, the party challenging the confirmation of an arbitration award knew of a potential conflict "a year or two" before the arbitrator decided the dispute but failed to raise this issue until after the arbitrator ruled. Id. The court stated that this meant one of two things: (1) that the party did not believe the conflict required disclosure or (2) that the party "may have been sand-bagging, holding his objection in

1  reserve in the event that he did not prevail in the arbitration." Id. Because of this delay, the court
2  held that the party had "waived any objection by not raising it in a timely fashion." Id.

3        Defendant here knew about the research attorneys months before the Final Award was issued
4  and had in its possession time sheets that contained the information as far back as April 2010. But
5  even without the billing records, Defendant's failure to object after the hearing and before the Final
6  Award was issued constitutes a waiver of its right to object to the use of the research attorneys. In
7  fact, the adverse interim opinion should have provided ample incentive for Defendant to object
8  immediately. That it did not do so only supports the notion that it waived its ability to do so later.
9  The award will be confirmed.

10        However, the Court's decision to confirm the arbitrator's award here should not be read as
11  condoning the arbitrator's behavior. This Court recognizes that arbitrators wield "mighty and
12  largely unchecked power." Luce, Forward, Hamilton & Scripps, LLP v. Koch, 162 Cal. App. 4th
13  720, 728 (Cal. Ct. App. 2008). Their decisions are, for the most part, final and unappealable.
14  Moncharsh, 3 Cal. 4th at 9-10. Therefore, "arbitrators should, of course, be encouraged to err on the
15  side of disclosure." Koch, 162 Cal. App. 4th at 734. Nonetheless, Defendant failed to object in a
16  timely way to the arbitrator's use of the research attorneys, did not make an adequate showing of
17  prejudice, and failed to demonstrate misconduct that would allow this Court to vacate the award.
18  Because state and federal law provide "only limited grounds for judicial review of an arbitration
19  award," Cable Connection, 44 Cal. 4th at 1344, this Court cannot vacate the arbitrator's decision.
20  The Court hopes that, in the future, the arbitrator will err on the side of disclosure.

21      **4.**    **Motion to Correct Award**

22      Plaintiff also moves to correct the arbitration award. Plaintiff argues that the arbitrator made
23  a mistake when calculating the final award for attorneys' fees and costs. Pl.'s Mot. to Correct
24  Award at 9-10. The Final Award grants Plaintiff the following fees and costs:

| | |
|---|---|
| Attorneys' fees related to tort claim | $675,000 |
| Attorneys' fees related to contract claim | $325,000 |
| 1.25 multiplier on lodestar of $525,000 | $131,250 |
| Attorneys' fees to prepare fees petition | $35,000 |

13

| Total costs of the suit | $32, 815 |

Choi Decl., Ex F at 55-56.  The arbitrator calculated the total of these fees and costs as $1,164,100.  Id. at 56.  However, the actual total of these separate fees and costs is $1,199,065.  The Court corrects this miscalculation and awards Plaintiff the full amount.  See Cal. Civ. Proc. Code § 1286.6(a); see also 9 U.S.C. § 11(a) (both allowing the correction of a miscalculation in an arbitration award).

**IV.    CONCLUSION**

For the foregoing reasons, this Court DENIES Defendant's Motion to Vacate the arbitrator's award and GRANTS Plaintiff's Motion to Confirm the award, and the Motion to Correct.

**IT IS SO ORDERED.**

Dated: April 1, 2011

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE